UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

In Re                     )
                            )    Case No.    17-30503
DEWITT L. WEARY, III and   )
TAMARRA T. WEARY,        )
                            )    Chapter 11
          Debtors.     )

## O P I N I O N

Before the Court after trial is FCB Banks' Motion for Relief from Automatic Stay and for Abandonment of Property from the Estate to pursue foreclosure of the post-confirmation note and mortgages in its favor. Because this Court finds that the automatic stay is no longer in effect, the Motion will be denied as moot.

## I.    Factual Background

The Debtors, DeWitt and Tamarra Weary, filed their voluntary petition under Chapter 11 on April 3, 2017. On their petition and schedules, the Debtors identified FCB as a creditor with claims in excess of $1 million secured by mortgages on their home located at 8 Country Lane in Columbia, Illinois, and a portfolio of rental income properties in Madison and St. Clair Counties in Illinois. Specifically, on their Schedule D: Creditors Who Have Claims Secured by Property filed April 17, 2017, the Debtors identified the properties securing FCB's claims with the following values: 1424 1st Avenue - $15,000; 1205 North 89th Street - $15,000; 103-105 Sumner - $100,000; 107-109 Sumner - $100,000;

3602 Falling Springs Road - $45,000; and 8 Country Lane - $350,000. FCB filed several proofs of claim asserting claims secured by the properties.

The Debtor's first amended plan of reorganization was filed January 19, 2018. The plan proposed the following treatment for FCB's secured claim class: FCB's liens would continue unimpaired, the Debtors would continue making monthly adequate protection payments per an order entered earlier in the case, FCB would receive a pro rata share of quarterly plan distributions from a creditor fund, FCB would receive its share of proceeds of its collateral, and any collateral not sold by the final distribution date would be surrendered back to FCB. Any deficiency at the time of surrender would be treated as a general unsecured claim.

The plan also provided that "[o]n the Effective Date, all Estate Property . . . will revest in the Reorganized Debtors and shall be free and clear of all claims and interests of Creditors and Parties in Interest, except as expressly provided in this Plan or the Confirmation Order." "Estate Property" is defined in the plan as all property of the "Estate" which, in turn, is defined as "the estate created upon the commencement of the Case pursuant to Code §§541(a) and 1115." "Effective Date" is defined in the plan as "the first Business Day following the day that the Confirmation Order becomes a Final Order." The plan further provided:

> Pursuant to the provisions of 11 U.S.C. §§105, 524, and 1141(d) and as [sic] except as otherwise provided in the Plan, the Confirmation Order shall discharge and release, as of the Effective Date, the Debtors, their estate and all of their respective property from any and all claims, debts, liens, security interests, encumbrances and interests that arose before the Confirmation

Date, including, but not limited to, all principal and any interest accrued and debts of any kind specified in 11 U.S.C. §502(g), 502(h), and 502(j) whether or not (a) a proof of claim or interest based upon such Claim, debt, right or Interest is filed or deemed filed under 11 U.S.C. §501; (b) a Claim or Interest based upon such Claim, debt, right or Interest is allowed under 11 U.S.C. §502[;] or (c) the holder of a Claim, debt, right or Interest accepted this Plan. In addition, subject to the provisions of this Plan, the Distributions made under this Plan shall be in exchange for and in compliance [sic] satisfaction, discharge, and release of all claims against the Debtors and any of their respective assets or property, including claims for interest accruing after the Petition Date and prior to the Effective Date. On or after the Effective Date, except as expressly provided in the Plan, all holders of Claims arising prior to the Confirmation Date shall, to the fullest extent possible under applicable law, be permanently barred and enjoined from asserting against the Debtors or their assets or property any further or other claims based on any act or omission, transactions or other activity of any kind or nature that occurred prior to the Confirmation Date.

After some negotiation, the Debtors' first amended plan was confirmed by order entered June 5, 2018. The confirmation order, however, modified the terms of the first amended plan, including the treatment of FCB's claims. Under the confirmed plan as modified, FCB and the Debtors would execute a new loan and mortgage package "with a principal balance in the approximate amount of $1,008,587.22" and monthly payments at a fixed rate of interest for 6 years with a balloon payment for the balance due upon maturity. The order further provided that "[i]f each and every term of the above loan is complied with, then when the above loan matures, [FCB] will renew or extend the above loan fixed for an additional 7 years at the WSJ prime rate then in effect at a 12 year amortization." The final paragraph of the confirmation order also provided that the Debtors would be responsible for filing "(1) a report with the Court certifying that they

have complied with the terms and conditions of the Plan (as amended or modified) and that they are otherwise eligible for a discharge under 11 U.S.C. §1141(d)(5); (2) a Motion for Entry of Discharge Order;  and (3) and [sic] an Application for Final Decree pursuant to Bankruptcy Rule 3022."

On November 26, 2018, the Debtors filed a motion for authority to refinance the debt to FCB as contemplated by the order confirming plan. The motion was granted by order entered December 19, 2018. Four months later, the Debtors filed a motion to administratively close case, which was docketed as a motion for final decree. The motion asserted that the confirmed plan had been "substantially consummated in accordance with 11 U.S.C. §1101(2) and [that] the estate ha[d] been fully administered, except for the completion of all plan payments." The motion asked that an order be entered administratively closing the case, adding that the "Debtors shall file a motion [to] reopen the case to enter their discharge order upon completion of payments under the Confirmed Plan." On April 30, 2019, the bankruptcy case was closed following a hearing at which the motion to administratively close case was granted.

The case was reopened for several months in 2021 to resolve a dispute with the Illinois Department of Revenue before being closed and then reopened again in late 2024 to deal with substantial settlement funds obtained from resolution of an employment discrimination claim held by DeWitt Weary. In connection with the 2024 reopening, the United States Trustee ("UST") informed the Court that her office was made aware of the settlement not from the Debtors but rather from the office of the Illinois Attorney General, prompting the UST's

attorney to reach out the Debtor's attorney in the employment dispute which led to an agreement not to disburse settlement funds to the Debtors without the UST's consent or an order from the bankruptcy court. The motion to reopen was granted at a hearing held November 14, 2024, with direction that the settlement funds be held in the Debtors' bankruptcy attorney's trust account pending further order. On January 8, 2025, the UST filed a motion to convert the case to Chapter 7, raising concerns about the Debtors' disclosure of the settled cause of action, use of settlement funds, and compliance with their confirmed plan terms. On January 14, 2025, the Debtors filed a motion to release operating funds, seeking authority to use settlement funds to, among other things, pay FCB for past due installments from October 2024 onward. The motion was granted in part by order entered January 28, 2025, which authorized the Debtors to use settlement funds to pay FCB outstanding installments due for October, November, and December 2024.

On May 22, 2025, FCB filed its Motion for Relief from Automatic Stay and for Abandonment of Property from the Estate now before the Court. The Motion seeks relief from stay to pursue foreclosure of mortgaged properties, an order requiring the Debtors to endorse and deliver to FCB all insurance checks for application against outstanding debts, and abandonment of the property and proceeds. FCB contends in the Motion that the Debtors failed to comply with all terms during the initial 6-year term of the loan contemplated by the order confirming plan and that FCB was therefore not required to extend the note after the initial maturity date of January 1, 2025. FCB says that the Debtors are in

default and that it is not adequately protected, that there is a lack of equity in the property for the benefit of the estate, and that the property is not necessary for an effective reorganization.

Thereafter, the Debtors filed a motion and then an amended motion to modify their confirmed plan, proposing, among other things, to force FCB to extend the note for an additional term. Notwithstanding their prior assertions in moving to close their case, the Debtors in their motion to modify contended that their plan has not been substantially consummated.[1] Around that time, the Debtors also filed a motion seeking recusal of the judge overseeing the case, resulting in the case being reassigned to the undersigned judge.

A trial on the Motion for Relief from Automatic Stay was held October 22, 2025. At the start of trial, prior to the presentation of evidence, counsel for FCB raised the issue of whether there was even an automatic stay in effect based on the post-confirmation status of the case. FCB believed that no stay was in effect and said it filed its Motion out of an abundance of caution. The Court acknowledged the issue but said it was disinclined to rule on it from the bench. Rather, the Court intended to proceed with trial on stay relief and take all matters under advisement. After a brief discussion about the burdens of proof, FCB with the burden of going forward began its presentation of evidence by calling the Debtor DeWitt Weary as an adverse witness.

---

[1] A second amended motion to modify was subsequently filed that sought to further modify treatment of FCB and other creditors.

Mr. Weary identified the post-confirmation promissory note dated December 27, 2018, signed by himself and Mrs. Weary in favor of FCB, with a principal balance of $1,030,042.93 and a maturity date of January 1, 2025. Mr. Weary also acknowledged that the note contemplated as security for the loan mortgages and assignments of rents in favor of FCB on 1424 1st Avenue, 1205 North 89th Street, 3602 Falling Springs Road, 103-105 Sumner, 107-109 Sumner, and 8 Country Lane. Mr. Weary identified the mortgage documents executed the same day in favor of FCB relating to the note and properties.

Mr. Weary disagreed with FCB's attorney's suggestion that the Debtors failed to make all monthly payments under the note when they were due but then conceded that the October, November, and December 2024 payments were not made at the time they were due. Under questioning from his own attorney, the Debtor explained that the last three payments for 2024 were ultimately made per court order entered January 28, 2025, authorizing for such purpose the release of settlement funds arising from Mr. Weary's employment discrimination claim. Mr. Weary said that all payments other than the balloon payment have now been made and he otherwise complied with all the terms of the note during the 6-year term.

As to why he was unable to make the October, November, and December 2024 payments when due and had to rely on the settlement funds to complete the monthly payment obligations after-the-fact, Mr. Weary conceded that he was in a rough spot at the time. He said that he was facing a rash of vacancies in his rental properties while also trying to redeem other property—not FCB's

collateral—from tax sale. Pressed further on his ability to afford the loan installment payments, the Debtor acknowledged entering into several forbearance agreements with FCB during the initial 6-year term. He identified a Second Amended Agreement to Forbear dated October 29, 2020, under which FCB agreed to extend deferral of monthly principal and interest payments from April 1, 2020, through December 1, 2020. Signed by the Debtors, the forbearance agreement recited the loan balance of $974,653.38 due as of September 30, 2020, the Debtors' agreement to continue making regularly scheduled escrow payments during the deferral period, and their understanding that the forbearance would result in additional interest and a higher balloon payment than under the original terms of the note. When asked about the reason for the forbearance agreements, Mr. Weary explained that rental occupancy and rates suffered in 2020 due to the COVID-19 pandemic which led to the Debtors' request for forbearance. He said that vacancy rates had since recovered and that he would be able to afford monthly payments if the loan term were extended.

As to his ability to afford monthly payments going forward which would be significantly greater under an extended term, the Debtor contended that rental income would be sufficient to make the required payments and that he could use the settlement funds as a fallback source of payment. Mr. Weary described various improvements and repairs he had made or was prepared to make which he believed increased property values and, in turn, would increase the rental income generated by the properties. He identified Schedule D filed in his bankruptcy case, questioning the accuracy of the values he assigned to the FCB

properties listed but claiming that, in any event, the properties had increased in value since the case was filed. Other than his residence which he said was now worth between $618,000 and $650,000, however, Mr. Weary did not ascribe a current dollar value to any of the FCB properties.

FCB called one other witness: Edward Kovach, a senior vice president at FCB covering banks in St. Clair, Monroe, and Madison counties. Mr. Kovach stated that he does valuations of properties as part of his duties and that he recently drove by each of the properties at issue in this case in preparation for trial. Based on what he could see from outside the properties, he approximated values for the properties equal to or just slightly higher than the values listed on Schedule D filed at the beginning of the bankruptcy case. Mr. Kovach said that he heard Mr. Weary's testimony about the repairs and improvements that had been made to the properties, but he disagreed about the extent to which they would add to the property values. On cross-examination, Mr. Kovach agreed that some of the improvements, if made, would increase property values and rents. And he agreed that third-party, walk-through appraisals would generally be more accurate than any drive-by valuation but suggested that his valuation assumed the interiors of the properties were in good condition.

At the close of testimony, each party presented arguments in favor of their respective positions. As part of its argument, FCB again contended that the automatic stay is no longer in effect based on the confirmed plan. The Debtors, in turn, argued that, although post-confirmation, there is still a stay in effect because the confirmed plan included a plan injunction requiring FCB to

establish its entitlement to relief in this Court. The parties presented their respective arguments for and against stay relief under §362(d), and the Court took the matters under advisement. They are now ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning modification of the automatic stay are core proceedings. 28 U.S.C. §157(b)(2)(G). The issues before the Court arise from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.    Legal Analysis

When a bankruptcy petition is filed, it generally operates as a stay of any action against the debtor or property of the estate. 11 U.S.C. §362(a). So long as the stay under §362 is in effect, an interested party must obtain relief from the bankruptcy court to modify the stay so that it may pursue the debtor or property in a forum other than the bankruptcy court. 11 U.S.C. §362(d). Actions taken without proper relief from and in violation of the automatic stay are generally void. *See Middle Tenn. News. Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077,

1082 (7th Cir. 2001) (citations omitted). But the automatic stay does not last indefinitely, and, once terminated, no longer bars creditors or other interested parties from taking actions that would otherwise be prohibited.

At trial, FCB argued that there is no automatic stay in effect in this case and that the relief it seeks is not necessary; it only filed the Motion out of an abundance of caution. The Debtors countered that whether the automatic stay terminated in this case is irrelevant because there is a plan injunction that requires relief be obtained from this Court. The Court finds that FCB is correct. The automatic stay terminated by operation of law well before the events giving rise to FCB's Motion, and the provisions of the Debtors' confirmed plan, to the extent they gave rise to a plan injunction, do not require that relief be obtained from this Court to enforce any rights or obligations under the plan.

Section 362(c) provides in relevant part that "(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;" and "(2) the stay of any other act under subsection (a) of this section continues until the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied[.]" 11 U.S.C. §362(c)(1)-(2).

Consistent with §1141(b), the Debtors' plan provided for vesting of the property of their estate back to them upon the effective date of confirmation. There is ample authority to support a finding that the automatic stay as against

property of the Debtors' estate terminated upon the effective date of confirmation which was the day after the confirmation order became a final order. *See, e.g.*, *HSBC Bank USA v. United Air Lines, Inc. (In re UAL Corp.)*, 360 B.R. 780, 785 (Bankr. N.D. Ill. 2007); *In re T.S.P. Indus.*, 117 B.R. 375, 377 (Bankr. N.D. Ill. 1990). The issue, however, could be debated in individual Chapter 11 cases which are often compared to Chapter 13 cases, particularly in light of the 2005 addition of §1115 which provides that all postpetition property acquired in individual Chapter 11 cases up until the time of case closure, dismissal, or conversion is property of the estate. *See In re Rael*, 527 B.R. 799 (Table), 2015 WL 847432, at *4-7 (B.A.P. 10th Cir. Feb. 27, 2015); *see also* Stephen R. Winship, *The Uncertain Status of the Automatic Stay Postconfirmation in Individual Chapter 11 Cases*, 2014 No. 10 NORTON BANKR. L. ADVISER NL 2. Regardless, the revesting of property in the debtor upon confirmation does not terminate the stay as to actions other than against property of the estate; the stay of such other acts terminates upon case closure, dismissal, or conversion. 11 U.S.C. §362(c)(2).

Here, the Court need not determine whether and to what extent the automatic stay terminated upon the effective date of confirmation because it certainly terminated when the case was first closed on April 30, 2019. As contemplated by the plan and confirmation order, the Debtors filed a motion to administratively close their case based on the plan having been substantially consummated and the estate having been fully administered. The motion did not ask that the automatic stay remain in force and effect, and it was granted as

filed. Section 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. §554(c). Thus, to the extent any property remained property of the estate following confirmation, it was no longer property of the estate upon closing of the case. By no later than April 30, 2019, the automatic stay had terminated entirely.

Before addressing the Debtors' argument that the plan injunction filled the gap created upon termination of the §362 stay, the possible existence of a discharge injunction should be addressed. There is no discharge injunction in effect here because the Debtors have not received their discharge in the case. Section 1141(d)(1) generally provides for a debtor's discharge upon confirmation of the Chapter 11 plan, but §1141(d)(5) provides that, "[i]n a case in which the debtor is an individual—(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan[.]" 11 U.S.C. §1141(d). Although the Debtors' plan suggested that their pre-confirmation debts would be discharged upon confirmation per §1141(d)(1), the order confirming plan expressly contemplated that the Debtors would seek discharge under §1141(d)(5) when eligible. The discharge language in the plan itself acknowledged that contrary language in the confirmation order would control, and, in any event, any ambiguity is properly resolved against the Debtors, as the drafters and proponents of the plan. *In re*

*Arns*, 372 B.R. 876, 885 (Bankr. N.D. Ill. 2007). The Debtors' motion to administratively close the case in 2019 further anticipated the case reopening for the purpose of entering their discharge upon completion of payments under the plan. No discharge has entered, and as such there is no discharge injunction.

As to whether a plan injunction is in effect that requires FCB to obtain relief from this Court, the Debtors make the argument without any reference to specific language or provisions in the plan. The discharge provisions in the plan do include language purporting to enjoin pre-confirmation claim holders "from asserting against the Debtors or their assets or property any further or other claims including claims based on any act or omission, transactions or other activity of any kind or nature that occurred prior to the Confirmation Date." Presumably, this is the language the Debtors were referring to in asserting that plan injunction provisions required FCB to obtain relief from this Court notwithstanding the termination of the stay under §362. But the plan language, in the context of the surrounding discharge provisions, is naturally read to mean that the terms of the confirmed plan replace and supersede all pre-confirmation or related claims and interests and that claim holders are barred from asserting or enforcing any right outside of those created by the confirmed plan. If it was intended that a stay be imposed to bridge the gap between termination of the automatic stay by operation of law at the time of confirmation or case closure and the imposition of the discharge injunction upon completion of the plan, the plan provisions do not make as much clear and therefore should not be interpreted as doing so. *Arns*, 372 B.R. at 885; *In re Lehman Fin. Group, LLC,*

2006 WL 2640210, at *6 (Bankr. N.D. Ill. Sept. 11, 2006). Nothing in the Debtors' plan or confirmation order bars FCB from enforcing the terms thereof or the Debtors' obligations thereunder.

Having found that there is no stay or relevant injunction in effect, the remaining question is whether FCB needs to seek any relief from this Court to enforce the terms of the confirmed plan. "A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002) (citation omitted). Ordinary contract principles and rules of interpretation apply to confirmed plans, and, accordingly, a post-confirmation default is treated as any other contractual default enforceable in any court of competent jurisdiction, including state court. *See In re Landreth Lumber Co.,* 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008); *Matter of Penrod*, 169 B.R. 910, 916-17 (Bankr. N.D. Ind. 1994); *In re Jordan Mfg. Co.*, 138 B.R. 30, 38 (Bankr. C.D. Ill. 1992). *See also Baggett Bros. Farm, Inc. v. Altha Farmers Coop., Inc.,* 149 So. 3d 717, 718 (Fla. Dist. Ct. App. 2014); *In re Metex Mfg. Corp.,* 510 B.R. 735, 741-42 (Bankr. S.D.N.Y. 2014).

It is of no consequence that the Debtors' confirmed plan provides for the bankruptcy court to retain jurisdiction of various matters, including disputes related to the plan or its enforcement. "Retention by the Bankruptcy Court of jurisdiction in the case post-confirmation merely continues availability of the Court as a forum for resolution of questions regarding administration of the plan and disputes that might arise under it." *In re Ernst,* 45 B.R. 700, 702 (Bankr. D.

Minn. 1985). But "[u]nless the matter at issue is within the exclusive jurisdiction of the Bankruptcy Court, the mere reservation of jurisdiction in the case by the Bankruptcy Court post-confirmation does not foreclose the right of a party to seek his remedy upon default under the plan in a state court having jurisdiction over the subject matter of the dispute." *Id.* Courts widely recognize that state courts have at least concurrent jurisdiction over issues of plan default or remedies upon default. *Landreth Lumber*, 393 B.R. at 205; *Wigley v. Lariat Cos. (In re Wigley)*, 624 B.R. 861, 868 (Bankr. D. Minn. 2021); *Lewis v. Anco Insulations, Inc. (In re Friede Goldman Halter, Inc.),* 602 B.R. 307, 312 (Bankr. M.D. La. 2019); *In re Hunt,* 424 B.R. 340, 343 (E.D. Tenn. 2010); *Baggett Bros. Farm*, 149 So. 3d at 718 (citing *In re Troutman Enters., Inc.,* 253 B.R. 8, 11 (B.A.P. 6th Cir. 2000), and *Paul v. Monts*, 906 F.2d 1468, 1476 (10th Cir. 1990)).

Some courts in the Seventh Circuit have suggested that plan defaults and remedies are properly resolved by the state court rather than the bankruptcy court. *In re Cenergy*, 2025 WL 2027524, at *5-7 (Bankr. W.D. Wis. July 18, 2025) (citing *In re T&A Holdings, LLC,* 2016 WL 7105903, at *5 (Bankr. N.D. Ill. Nov. 2, 2016) (Bankruptcy courts do not have exclusive jurisdiction over issues of post-confirmation default and the "call for exercising concurrent jurisdiction is increasingly tenuous as time passes after confirmation.")); *Jordan Mfg.*, 138 B.R. at 36-38 (explaining that aggrieved party may seek dismissal or conversion in bankruptcy court based on the default or resort to state court for default remedies under state law); *but see In re J&B Haldeman Holdings, LLC,* 517 B.R. 910, 918 (Bankr. W.D. Wis. 2014) (concluding that bankruptcy court has

jurisdictional authority to enforce plan which lapses only after plan has been fully consummated).

Based on the foregoing, it is clear that FCB's pursuit of post-confirmation plan default remedies is not stayed by §362 or any discharge or plan injunction. Nor is the matter one within this Court's exclusive jurisdiction. The Motion for Relief from Automatic Stay and for Abandonment of Property from the Estate is therefore properly denied as moot.

As part of its Motion, FCB sought a finding that the Debtors were in default of their obligations under their confirmed plan. The evidence at trial supports a finding that the Debtors failed to comply with their payment obligations during the initial 6-year term of the post-confirmation loan entered into by the parties as contemplated and required by the order confirming the plan. Specifically, when the 6-year term ended and the note matured on January 1, 2025, the Debtors had not paid the last three monthly payments thereby relieving FCB of any obligation to extend the note for an additional 7-year term and triggering the balloon payment for the balance of the outstanding loan amount. That the Debtors ultimately paid the amounts owed for the last three months of the initial loan term does not change the fact that, when the loan term ended on January 1, 2025, they had not complied with their obligations under the note. As of January 1, 2025, the balance of the debt was owed to FCB, and, having failed to pay the balance, the Debtors are now in default of that obligation.[2]

---

[2] The Court makes no findings as to the relief available to FCB or the remedies to which it may be entitled based on the Debtors' default. To the extent the Motion for Relief from Automatic Stay seeks other affirmative relief, those requests are beyond the scope of this Opinion and, in any event, were not among the issues tried before this Court.

In issuing the decision here, the Court is cognizant of the UST's pending motion to convert the case to Chapter 7 and the Debtors' pending motion to modify their confirmed plan. Those matters will be taken up in due course. Their resolution will involve analysis of knotty and somewhat novel legal issues that go beyond the narrow issue now before the Court. *Compare In re Saberioon*, 658 B.R. 432, 447 (Bankr. S.D. Tex. 2024) (confirmation of consensual individual Chapter 11 plan is binding and survives conversion), *and In re Aarons*, 2023 WL 3918393, at *6 (B.A.P. 9th Cir. June 8, 2023) (settlement with creditor incorporated into confirmed plan continued to bind after case conversion), *with In re Akamai Physics, Inc.,* 2022 WL 1195631, at *6-7 (Bankr. D.N.M. Apr. 21, 2022) (individual Chapter 11 "disposable income" plans analogous to Chapter 13 plans and negated by conversion). *See also In re Sandford*, 498 B.R. 307, 311-12 (Bankr. D.N.M. 2013) (following reasoning of Seventh Circuit analysis for Chapter 13 modifications and recognizing the relaxed standard for modification in individual Chapter 11 cases but ultimately denying modification of individual Chapter 11 debtor's plan, noting strong public policy in favor of enforcing compromises and settlement agreements reached with creditors).

Whether and how the ultimate outcome of those motions might affect FCB's rights remains to be seen. But with no stay or injunction now in effect, the mere possibility of modification or conversion is not a basis to enjoin FCB from pursuing relief while those other matters are being litigated. *See Ernst*, 45 B.R. at 704 (court would not enjoin creditor where it did not see substantial likelihood of successful plan modification). In the meantime, FCB is free to

enforce the terms of the Debtors' confirmed plan in any court of competent jurisdiction.

### IV.   Conclusion

The Debtors' Chapter 11 plan, as confirmed, contemplated post-confirmation execution of a new note and mortgages in favor of FCB and required complete compliance with the terms of such note as a condition precedent to FCB extending the note for a second term. The Debtors unquestionably failed to timely make payments under the original note term and were in default when the note matured on January 1, 2025, thus triggering a balloon payment due for the outstanding balance on the loan. Nearly a year later, the loan balance remains outstanding. Because the automatic stay is no longer in effect and this Court does not have exclusive jurisdiction over issues of default on the Debtors' confirmed plan, FCB is free to pursue its remedies for default in any court of competent jurisdiction without first obtaining relief from this Court. FCB's Motion for Relief from Automatic Stay was not necessary and will therefore be denied as moot.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: December 18, 2025

/s/ Mary P. Gorman

_____

UNITED STATES BANKRUPTCY JUDGE